# EXHIBIT A

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Alexis Geis, Kara Lyndon and Tiffany Morris

**COUNTY** Bristol

**ADDRESS:** 8 Boston Lane, Palm Coast, FL

87 Myricks Street, Berkley, MA, 12 Railroad Avenue, Taunton, MA

**DEFENDANT(S):** Nestle USA, Nestle Waters North America, Inc. and Scott Kelly

**ATTORNEY:** Christopher J. Trombetta

**ADDRESS:** 121 North Main Street, Suite 12

Mansfield, MA  02048

**ADDRESS:** 375 Paramount Drive, No. 3, Raynham, MA

2900 Long Ridge Road, Stamford, CT, New Bedford, MA

**BBO:** 556923

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BE 1 | Fraud/Business Tort | A | ☒ YES  ☐ NO |

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ............................................................................ $ _____
   2. Total doctor expenses ............................................................................ $ _____
   3. Total chiropractic expenses .................................................................... $ _____
   4. Total physical therapy expenses ............................................................ $ _____
   5. Total other expenses (describe below) ................................................... $ _____
                                     Subtotal (A): $ _____

B. Documented lost wages and compensation to date ........................................................... $ _____
C. Documented property damages to dated .......................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ......................................... $ _____
E. Reasonably anticipated lost wages ................................................................................... $ _____
F. Other documented items of damages (describe below) ..................................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                            more than

Fraud/Chapter 93A - Misappropriated Customer Funds

TOTAL (A-F):$ 40,000,000

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $

Signature of Attorney/Pro Se Plaintiff: X                                    Date: 8/30/17

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X                                    Date: 8/30/17



## COMMONWEALTH OF MASSACHUSETTS

BRISTOL ss.                                                        SUPERIOR COURT

|  |  |
|---|---|
| ALEXIS GEIS, KARA LYNDON, AND TIFFANY MORRIS, | * * * |
| Plaintiffs, | * * |
| v. | * C.A. No.: 1773CV00767A |
| NESTLÉ USA, NESTLÉ WATERS NORTH AMERICA, INC., AND SCOTT KELLY, | * * * |
| Defendants | * * |

BRISTOL SS SUPERIOR COURT
FILED

SEP – 1 2017

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

### CLASS ACTION COMPLAINT

The Class Action Plaintiffs hereby file this complaint to recover amounts which Nestlé USA and Nestlé Waters North America, Inc. ("Nestlé Waters") have wrongfully appropriated through fraudulent representations, breaches of contract, and non-disclosure. Plaintiffs, Kara Lyndon and Tiffany Morris, also seek relief for their termination in violation of public policy.

### PARTIES

1.      Alexis Geis is an individual who resides at 8 Boston Lane, Palm Coast, Florida.

2.      Kara Lyndon is an individual who resides at 87 Myricks Street, Berkley, Massachusetts.

3.      Tiffany Morris is an individual who resides at 12 Railroad Avenue, Taunton, Massachusetts.

4.      Nestlé Waters is a company with a place of business located at 375 Paramount Drive, No. 3, Raynham, Massachusetts.   Nestlé Waters conducts business in Massachusetts through its sale of product in this state and through the maintenance of a call center in this state which is relevant to the claims at issue in this case.

5.      Nestlé USA is a company with a principal place of business located at 2900 Long Ridge Road, Stamford, Connecticut.  It owns and controls Nestle Waters.

6.      Scott Kelly is an employee of Nestlé Waters and had been the supervisor of Ms. Lyndon and Tiffany Morris.  He lives in New Bedford, Massachusetts.

ALLEGATIONS

7.      Nestlé Waters is in the business of selling bottled water nationwide customers who are individuals or businesses.

8.      It does so through the delivery of water, iced tea, coolers and others items to more than one million customers nationwide.

9.      Nestlé Waters sells its products under the brand name Ready Fresh.

10.      The products Nestlé Waters sells include, without limitation, Poland Spring, Arrowhead, Ozarka, Zephryr Hills, Ice Mountain, San Pellegrino, Perrier, Aqua Panna, Nestea, Sweet Leaf Tea, Tradewinds Tea and Nestlé Pure Life.

2

11.    Such customers obtain their accounts through contact with Nestlé Waters.

12.    Nestlé Waters also maintains a call center in Raynham, Massachusetts.

13.    In that call center is a group which handles customer complaints as to prices.

14.    More than two hundred individuals comprise that group.

15.    They handle ten thousands of calls.

16.    When a customer calls and indicates that it will be terminating its contract the customer is passed to a Nestlé Waters call representatives whose job it is to "save" the customer.

17.    Nestle Waters receives nearly fifty thousand such calls each year. Nestle Waters also maintains a document listing the number of call as to efforts to "save" customers.

18.    To do so these representatives have the authority to reduce each customer's prices to a level which the customer would find acceptable.

19.    It is important to note there is no pricing consistency among the customers.

20.    Many prices as to certain customers are much higher than those of other customers as to the same products.

21.    The representatives have the ability to change prices as to different customers using different prices on the same product.

22.     For example, a call representative may lower a bottle price to $5.99 for one client.

23.     As to another client the representative may lower the price just to $6.99 per bottle of the same product if such a drop is enough to save the customer.

24.     The prices apply to numerous items which include bottles of water, bottles of iced tea, rental of coolers and other items.

### One Year Agreements

25.     Standard practice used by the Nestlé Waters representatives designated with "saving" customers is to offer a price reduction which Nestlé Waters agrees will be in effect for one year.

26.     The representatives have been trained by managers to engage in the practice.

27.     As part of the process of trying to save a customer, the representative, as noted above, offers the customer a lower price on his or her products. Each representative also would indicate that the lower prices would be in effect for one year.

28.     This practice had been communicated by management to the "savings" call representatives. They had been told to use it on every occasion when trying to "save" a customer."

29.     Accordingly, this practice had been carried on by each member of the "savings" group. It had been company policy.

30.     The formation of such agreements is evidenced in call notes as to each customer conversation.

31.     More than 50,000 call notes exist and evidence separate one year agreements with customers who had indicated they may wish to terminate their relationships with Nestlé Waters.

### Covert Elevation of Prices Subject to Agreement

32.     On or before January 1, 2016, Nestlé Waters instituted a plan to raise all prices on its water products.

33.     These products would include those subject to one year agreements entered into with a customer and Nestlé Waters through one of its "savings" call representatives.

34.     Kara Lyndon, a Nestlé "savings" representative, asked Michael Lyons, a sales manager, why the program had been implemented.

35.     Ms. Lyndon also asked why prices subject to one year agreements would be raised.  Michael Lyons indicated that Nestlé Waters Executive Vice President, Henrik Jelert, said that prices as to products subject to one year agreements should be raised.

36.     Mr. Lyons also said that Mr. Jelert stated "we will see what happens" as to whether customers who had agreed to a price for one year will complain or even notice the increases.

### Failure to Notify Clients Pertaining One Year Agreements

37.     Nestlé Waters did not notify any of the clients possessing one year agreements of increases in prices which began in late 2015.

38.     Prices have increased as to each customer several to numerous times from late 2015 to the present.

5

39.    Several examples of the existence and breach of agreements are as follows.

40.    On July 5, 2016, Nestlé had promised Alexis Geis that the price for each water cooler would be $1.99 until December 17, 2017.

41.    In violation of the agreement, on September 27, 2016, Nestlé Waters raised the price from $1.99 per bottle to $3.49 per cooler.

42.    On July 5, 2016, Nestlé Waters also had promised that Ms. Geis would pay $5.99 for a three gallon bottle until December 17, 2017.

43.    On October 31, 2016, Nestlé Waters increased the price to $6.29.

44.    Ms. Geis had paid the increased prices although she had not been obligated to do so.  She paid the prices because she did not know that they had occurred.

45.    For customer Joanna Abe, on December 8, 2015, Nestlé Waters agreed to reduce for one year the prices as to a water cooler and five gallon bottles.

46.    Nestlé Waters reduced from $3.99 to $2.99 the water cooler rental price.  It also reduced the price as to the five gallon bottles from $8.38 to 7.49. Nestlé Waters confirmed that the pricing would be valid for one year.

47.    The price, however, increased on December 10, 2015, two days later.

48.    The Cooler price increased to $4.99 and the five gallon bottles to $8.38.

6

49.    On January 16, 2016, the water bottle price increased again to $8.49. Ms. Abe called on February 16, 2016. She complained. The call representative then reduced the prices because of Ms. Abe's complaints.

50.    Effective January 2016, Nestlé raised the prices which it had promised Ms. Abe would remain unchanged for one year.

51.    On June 10, 2016, Nestlé elevated prices as to Ms. Abe again.

52.    Ms. Abe had paid the increased prices because she had been unaware of them.

53.    On December 8, 2015, Nestlé had promised a customer, Pro Spec Interiors, that its price as to a water cooler would remain in effect until January 1, 2017. The price had been reduced from $1.00 to 0.00 through January 1, 2017.

54.    On January 6, 2016, Nestlé raised the price of that item from $0.00 to $2.00. It also raised the price of five gallon bottles of spring water from 5.99 to $6.99.

55.    Kara Lyndon, a Nestlé Waters Senior Retention Specialist, has indicated that price increases had been passed on to all clients who previously had been provided by Nestlé Waters with an agreement that the prices would remain unchanged for one year.

56.    No charges ever had been reduced as to such customers unless the customer called and complained.

57.    Many customers did not notice the changes in the price.

7

58.     Nestlé Waters call records will demonstrate that nearly 50,000 customers who had entered into one year agreements did not call to complain as to price increases and thus paid the increases.

59.     If a customer did not call, then no reduction would occur.

60.     The customers paid these charges in breach of Nestlé's agreement to keep them in place for one year.

61.     Never did Nestlé lower the price as to any customer who possessed a one year agreement but who did not call to complain.

62.     While thousands of customers had been subjected to these improperly inflated prices, customers who did not call and thus paid improperly inflated prices, include for example:  Balaram Velga, Best Friend Financial Tax and Immigration, Niles West-English, Killashee Investments LLC, Kenres Lally, Cloudlock, Dental Acts Associates Somerville, P.C., and Bristol-Plymouth Moving and Storage.

63.     Nestlé Waters simply took the money from those and nearly 50,000 additional customers wrongfully.

### The Amount Stolen by Nestlé Waters

64.     Cheated customers generally lose between $100 and $400 dollars per year.

65.     The damages also continue as to each cheated customer.

66.     Each is being subjected to a price increase which never should have occurred.

8

67.     Although a price increase after the one year agreement expired could be deemed acceptable, the improper elevation price during the term of the agreement remains.

68.     Accordingly, each cheated customer continues to pay an improperly inflated price.

69.     Total damages to date exceed twenty million dollars.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Massachusetts Rule of Civil Procedure on behalf of the following class (the "Class"):

> All Nestlé Waters customers who had been provided with a one year agreement as to pricing but as to which Nestlé Waters raised prices during that one year period.

71.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigation this matter.

72.     At this time Plaintiff believes that number of Class members exceed 50,000.

73.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include but are not limited to:

> a.     Whether Nestlé Waters increased prices as to customers who had entered into a one year agreement as to price.

9

74.     Plaintiffs' claims are typical if not identical to those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein.

75.     Plaintiffs will adequately protect the interests of the Class members. Plaintiffs have retained counsel that is experienced in litigating unpaid wage actions. Neither Plaintiffs nor their counsel have any interests adverse to those of the other Class members.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are based on the same conduct of defendants posed as to all drivers. Accordingly, it is desirable for purposes of judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

77.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final relief as to damages and final injunctive or equitable relief with respect to the Class as a whole.

78.     Defendants' conduct is generally applicable to the Class as a whole.

10

Wrongful Dismissal of Kara Lyndon

79.    Nestlé Waters refused to explain to Ms. Lyndon that it had been attempting to steal money from individuals who had agreed to a one year fixed price agreement and who did not call to complain.

80.    Instead, it took hostile action toward Ms. Lyndon as part of an effort to terminate her for complaining as to fraudulent activity.

81.    Nestlé Waters had been forcing Ms. Lyndon and others to conceal what the company had been doing as to fraudulent activity.

82.    Nestlé Waters told her specifically not to disclose the fraud.

83.    She had been told to lie to customers who called to complaint that the price change had been the result of a "system error."

84.    That contention had been untrue because Nestlé Waters had planned to steal from the customers.

85.    If Ms. Lyndon had disclosed the plan the customers could report it to legal authorities as fraud.

86.    Accordingly, Nestlé Waters set in motion a plan to discharge Ms. Lyndon.

87.    Nestlé Waters contended that she offered derogatory remarks as to a particular employee.

88.    That contention had been untrue.

89.    Ultimately, Scott Kelly, her supervisor, terminated Ms. Lyndon for pretextual reasons.

90.    She had worked at Nestlé Waters for six years.

11

91.   She had been an absolutely stellar employee.

92.   Nestlé Waters terminated Ms. Lyndon only because she indicated that engaging in the fraud by Nestlé Waters had been wrong and should be corrected.

### Tiffany Morris

93.   Nestlé Waters also terminated Tiffany Morris who also acted as a representative as to saving customers who called.

94.   Like what Nestle Waters had done as to Ms. Lyndon, it also refused to explain to Ms. Morris that it had been attempting to steal money from individuals who had agreed to a one year fixed price agreement and who did not call to complain.

95.   Instead, it took hostile action toward Ms. Morris as part of an effort to terminate her for complaining as to fraudulent activity.

96.   Nestlé Waters had been forcing Ms. Morris, Ms. Lyndon and others to conceal what the company had been doing as to fraudulent activity.

97.   Nestlé Waters told Ms. Morris specifically not to disclose the fraud.

98.   She had been told to lie to customers who called to complaint that the price change had been the result of a "system error."

99.   That contention had been untrue because Nestlé Waters had planned to steal from the customers.

100.   If Ms. Morris had disclosed the plan the customers could report it to legal authorities as fraud.

12

101.    Accordingly, Nestlé Waters set in motion a plan to discharge Ms. Morris.

102.    Ultimately, Scott Kelly, her supervisor, terminated Ms. Morris for pretextual reasons.

103.    She had been an absolutely stellar employee.

104.    Nestlé Waters terminated Ms. Morris only because she indicated that engaging in the fraud by Nestlé Waters had been wrong and should be corrected.

Count I<br>(Breach of Contract)

105.    Plaintiffs incorporate the allegations of paragraphs 1 through 104 as if fully set forth herein.

106.    The class action plaintiffs and Nestlé had an agreement where prices would not increase for one year.

107.    Nestlé breached that agreement.

108.    Accordingly, the class action plaintiffs are entitled to recovery.

Count II<br>(Chapter 93A § 11 - By Corporate Class Action Plaintiffs)

109.    Plaintiff incorporates the allegations of paragraphs 1 through 108 as if fully set forth herein.

110.    Nestlé engaged in unfair and deceptive acts.

111.    Such acts caused the corporate Class Action plaintiffs to lose money.

13

112.    As a result, the Class Action plaintiffs are entitled to recovery of

treble damages and payment of attorney's fees.

Count III
(Fraud)

113.    Plaintiff incorporates the allegations of paragraphs 1 through 112

as if fully set forth herein.

114.    Nestlé represented that prices would remain in effect for one year.

115.    Nestlé knew that such a representation had been false because it

intended to raise such prices.

116.    The representation had been made by Nestlé's representation.

117.    Many of the representatives are set forth in the notes as to

conversations with each customer.

Count IV
(Breach of Contract – Wrongful Termination in
Violation of Public Policy –   Kara Lyndon)

118.    Plaintiff incorporates the allegations of paragraphs 1 through 117

as if fully set forth herein.

119.    Defendants had an obligation to retain Ms. Lyndon after she

complained as to illegal actions committed by the defendants as to ongoing fraud

and her request that it cease.

120.    Defendants had an obligation to retain Ms. Lyndon after she

complained of being forced to engage in inappropriate actions.

121.    Defendants terminated Ms. Lyndon because she lodged such

complaints and made such requests.

122.   As a result, the defendants terminated her in violation of public policy.

123.   As a result, she is entitled to damages in an amount exceeding $200,000.

Count V
(Breach of Contract – Wrongful Termination in
Violation of Public Policy – Tiffany Morris)

124.   Tiffany Morris incorporates the allegations of paragraphs 1 through 123 as if fully set forth herein.

125.   Defendants had an obligation to retain Ms. Morris after she complained as to illegal actions committed by the defendants as to ongoing fraud and after she requested that the conduct cease.

126.   Defendants had an obligation to retain Ms. Morris after she complained of being forced to engage in inappropriate actions.

127.   Defendants terminated Ms. Morris because she lodged such complaints and made such requests.

128.   As a result, the defendants terminated her in violation of public policy.

129.   As a result, she is entitled to damages in an amount exceeding $200,000.

WHEREFORE, Plaintiffs pray that the Court:

1. Enter judgment in favor of the Class Action Plaintiffs and against the Defendants on Count I in an amount to be determined at trial;

2. Enter judgment in favor of the Class Action Plaintiffs and against the Defendants on Count II in an amount to be determined at trial, such award to be trebled, and award the Class Action plaintiffs their attorney's fees;

3. Enter judgment in favor of the Class Action Plaintiffs and against the Defendants on Count III in an amount to be determined at trial;

4. Enter judgment in favor of Ms. Lyndon and against the Defendants on Count IV in an amount to be determined at trial;

5. Enter judgment in favor of Ms. Morris and against the Defendants on Count V in an amount to be determined at trial;

6. Award Plaintiffs punitive damages;

7. Award Plaintiffs interest and costs, which include attorneys' fees; and

8. Award such other and further relief as the court deems appropriate.

16

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO
TRIABLE.

ALEXIS GEIS, KARA LYNDON,
AND TIFFANY MORRIS,

By their attorney,

LAW OFFICE OF
CHRISTOPHER J. TROMBETTA

Christopher J. Trombetta (BBO No.
556923)
121 North Main Street, Suite 12
Mansfield, MA  02048
(508) 339-5900 - Telephone
(508) 339-3111 – Facsimile
chris@trombettalaw.com

Dated:  August 30, 2017

Form #42

# COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.                                    SUPERIOR COURT DEPT. OF THE TRIAL COURT

CIVIL ACTION

[SEAL]                                          No. 1773CV00767A

Alexis Geis, Kara Lyndon, _____ , Plaintiff (s)
and Tiffany Morris

v.

Nestle USA, Nestle Waters
North America, Inc. and _____ , Defendant(s)
Scott Kelly

(TO PLAINTIFF'S ATTORNEY :
PLEASE INDICATE TYPE OF ACTION INVOLVED :—
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER.)

### SUMMONS

TO THE ABOVE-NAMED DEFENDANT: Nestle USA

You are hereby summoned and required to serve upon Christopher J. Trombetta

plaintiff's attorney, whose address is 121 North Main St., #12, Mansfield, MA    02048
an answer to the complaint which is herewith served upon you, within (20) days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgment by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the office of the Clerk of this
Court at 9 Court St., Rm either before 13 Taunton, MA 02780 service upon plaintiff's attorney or within a
reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim
any claim which you may have against the plaintiff which arises out of the transaction or
occurrence that is the subject matter of the plaintiff's claim or you will thereafter be
barred from making such claim in any other action.

Chief Administrative
Witness, Hon. Judith Fabricant. Esq., Justice of the Superior Court Dept. of the Trial
Court, at Taunton, the……26th………………………………day of……September…………, in the year
of our Lord two thousand and …………seventeen…………

*Magistrate*

NOTICE TO DEFENDANT — You need not appear personally in Court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. If the Commonwealth or an officer of agency thereof is a defendant, the time to be inserted is 60 days.

## COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

ALEXIS GEIS, KARA LYNDON,
and TIFFANY MORRIS,

                 Plaintiffs,

v.

NESTLÉ USA, NESTLÉ WATERS
NORTH AMERICA, INC., and
SCOTT KELLY,

                 Defendants.

Civil Action No. 1773-cv-00767A

## NOTICE OF DISMISSAL OF DEFENDANT NESTLÉ USA WITHOUT PREJUDICE

Pursuant to Rule 41(a)(1)(i) of the Massachusetts Rules of Civil Procedure, Plaintiffs

Alexis Geis, Kara Lyndon, and Tiffany Morris hereby give NOTICE that all claims asserted

against Defendant Nestlé USA in the Class Action Complaint filed in the above-captioned

matter, *see* File Ref. No. 1, are to be dismissed without prejudice and without costs or attorney's

fees to any party.  In relation to this NOTICE, Plaintiffs state the following:

      1.       None of the defendants to this action has served an answer or a motion for

summary judgment on the Plaintiffs, and, accordingly, dismissal without prejudice pursuant to

Rule 41(a)(1)(i) should enter with respect to Defendant Nestlé USA.

      2.       Prior to filing this Notice, Plaintiffs had, and continue to have, the assistance of

the undersigned counsel, and Plaintiff's file this Notice willingly and voluntarily.

1

Respectfully submitted,

ALEXIS GEIS, KARA LYNDON
and TIFFANY MORRIS

By their attorney,

_____
Christopher J. Trombetta (BBO #556923)
LAW OFFICE OF CHRISTOPHER J.
TROMBETTA
121 North Main Street, Ste. 12
Mansfield, MA 02048
(508) 339-5900 (telephone)
(508) 339-3111 (facsimile)
chris@trombettalaw.com

DATED: October 17, 2017

31024153.1

2